UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
USALLIANCE FEDERAL CREDIT UNION,

                                              Plaintiff,

v.

S/V HELICORNE II (O.N. 1265818), her engines,
tackle, equipment, and appurtenances *in rem*

and

CHRISTOPHER LAWRENCE PARACHINI and
MOONBEAM GATEWAY MARINA LLC,
*in personam*
                                               Defendants
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
**24-cv-03530-OEM-TAM**

**ORELIA E. MERCHANT, United States District Judge:**

       Plaintiff USAlliance Federal Credit Union ("USAlliance" or "Plaintiff") filed a complaint against S/V HELICORNE II (O.N. 1265818), her engines, tackle, equipment, and appurtenances (the "Vessel") *in rem* and against Christopher Lawrence Parachini ("Parachini") and Moonbeam Gateway Marina LLC ("Moonbeam Marina," collectively with Parachini, "Defendants"), *in personam* on May 14, 2024. Complaint ("Compl."), ECF 1. USAlliance brings an action *in rem* against the Vessel and claims for breach of contract, declaratory judgment, and for a temporary restraining order and a preliminary injunction against Defendants. *Id*. Before the Court is USAlliance's motion for a preliminary injunction, filed on May 14, 2024. Motion for Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction (the "Motion"), ECF 4. For the reasons that follow, USAlliance's motion for a preliminary injunction is **GRANTED.**

1

## BACKGROUND[1]

Plaintiff USAlliance is a federally chartered credit union with a principal office in Rye, New York. Compl. at 1. Defendant Moonbeam Marina, a limited liability company, owns or operates the Moonbeam Gateway Marina in Brooklyn, New York. *Id.* at 2.

On October 14, 2015, Parachini and his now-deceased spouse Jennifer A. Blumin executed and delivered a First Preferred Ship Mortgage (the "Mortgage") to Plaintiff covering the whole of the Vessel and securing a principal indebtedness of $162,500.00 along with the performance of certain other obligations as set forth in an accompanying Loan and Security Case Agreement. *Id.* at 14-30, Exs. 1, 2. Plaintiff assigned the Mortgage to Seacoast National Bank on October 24, 2016 but continues to act as the servicer for the Mortgage, *inter alia* with the power to make collections and participate in any proceedings to enforce the Mortgage. *Id.* at 3.

From 2021 to 2024, the Vessel was moored at the Moonbeam Marina. Compl. at 3. On April 24, 2024, Moonbeam Marina delivered a "Notice of Lien and Sale" to Plaintiff's principal office, referring to Sections 184 and 201 of the New York Lien Law. *Id.* at 34-38, Ex. 4. The Notice of Lien and Sale states that Moonbeam Marina is now in possession of the Vessel and is entitled to a garageperson's lien over the Vessel for $379,616.09 in "winterization & storage" fees. *Id.* The notice further states that should the lien remain unsatisfied, Moonbeam Marina will advertise the Vessel for sale at an auction at 2:30 PM on May 20, 2024. *Id.*

USAlliance alleges that Parachini has defaulted under the terms of the Mortgage and the Loan and Security Agreements, having breached several contractual duties enumerated in said agreements. *Id.* at 4-5. USAlliance asserts that Parachini owes a principal balance of $87,490.19,

---

[1] The following background is taken from USAlliance's complaint, and other submissions made in connection with the instant motion and are taken as true for the purposes of this motion only.

in addition to accrued interest, collection, recovery costs, attorneys fees and expenses, and any additional indebtedness to accrue until this action is concluded. *Id.* at 5.

On May 14, 2024, Plaintiff filed this action and moved for an order to show cause for a temporary restraining order and a preliminary injunction preventing Defendant Moonbeam Marina from selling the Vessel. *See* Compl.; *see also* Plaintiff's Memorandum in Support of Unsigned Order to Show Cause ("MOL"), ECF 5 at 2. The Court ordered Defendants to respond to Plaintiff's motion by May 17, 2024. May 15, 2024 Order. On May 17, 2024, Parachini responded to Plaintiff's motion, writing that he does "not oppose the entry of a temporary restraining order and/or preliminary injunction to enjoin the pro se auction currently set for May 20, 2024." Defendant's Letter in Response to Plaintiff's Motion for TRO ("Def Letter"), ECF 17 at 1. Counsel for Defendant Moonbeam Marina has not yet made an appearance in this action or made any filings in opposition.

On May 17, 2024, Plaintiff filed a letter informing the Court that Plaintiff learned from email exchanges with Defendants that, on the morning of May 15, 2024, Defendants had entered into an agreement to delay the sale of the Vessel until June 20, 2024. *See* Plaintiff's Letter re Status Report and Plaintiff's Motion for TRO and Preliminary Injunction ("Pl. Letter"), ECF 18 at 1-2. Plaintiff further asserted that both Defendants confirmed that they would not oppose the temporary restraining order and preliminary injunction. *Id.* at 2. While Defendant Parachini was willing to stipulate that the Vessel would not be sold without Plaintiff's consent and until the mortgage is satisfied, Defendant Moonbeam Marina refused to so stipulate. *Id.*

On May 19, 2024, the Court issued a temporary restraining order and ordered Defendant Moonbeam Marina to show cause why it should not be enjoined from selling the Vessel, setting the show cause hearing for May 30, 2024. *See* Order Granting Temporary Restraining Order and

3

Order to Show Cause, ECF 19 at ¶¶ 1-2.  On May 28, 2024, Plaintiff filed another letter updating the Court that Defendant Moonbeam Marina did not intend to make an appearance and would not file any opposition to Plaintiff's motion for a preliminary injunction.  *See* Plaintiff's Letter re Status Report and Plaintiff's Motion for TRO and Preliminary Injunction ("Pl. Status Letter"), ECF 21 at 1.

On May 29, 2024, the Court canceled the May 30, 2024 show cause hearing and extended the temporary restraining order deadline to from May 19, 2024 to June 16, 2024.  *See* May 29, 2024 Order.  To provide Defendants a final opportunity to voice any objection to the entry of a preliminary injunction, the Court directed Defendants to file letters confirming their positions regarding the preliminary injunction.  On June 14, 2024, Parachini filed a letter confirming that he "does not oppose the entry of a preliminary injunction." Parachini June 14, 2024 Letter, ECF 24.  To date, Moonbeam Marina has not filed a letter in response to the Court's May 29, 2024 Order.

## STANDARD OF REVIEW

To justify a preliminary injunction, "a movant must demonstrate (1) irreparable harm absent injunctive relief; [and] (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"  *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)).  Additionally, the Supreme Court and the Second Circuit have instructed courts to assess the extent that "the injunction serves the public interest."  *SAM Party of New York v. Kosinski*, 987 F.3d 267, 273–74 (2d Cir. 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

4

## DISCUSSION

Before addressing whether USAlliance has made the necessary showing to be entitled to a preliminary injunction, the Court must consider whether it can properly issue an asset freeze under the circumstances presented in this case.

In determining the propriety of a prejudgment asset freeze, Courts in the Second Circuit apply the seminal cases *Grupo Mexicano* and *Gucci America*. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 310, 333 (1999) (holding that a preliminary injunction preventing a Mexican holding company from disposing of its assets pending adjudication of a contract claim for money damages was not appropriate where there was no lien on the company's assets); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014) (holding that the district court had equitable authority to freeze defendant trademark infringer's assets pending adjudication of plaintiff's accounting action in equity against defendant). "In determining whether a prejudgment asset freeze is permissible, District Courts in this Circuit applying *Grupo Mexicano* and *Gucci America* 'examine each count [of a complaint] in turn to determine whether the count seeks equitable relief, considering the basis for the plaintiff's claim and the nature of the underlying remedies sought.'" *AKF, Inc. v. AvantGarde Senior Living*, No. 1:21-CV-188-BKS-DJS, 2021 WL 2662070, at *5 (N.D.N.Y. Apr. 29, 2021) (quoting *Shamrock Power Sales, LLC v. Scherer*, No. 12-cv-8959, 2016 WL 6102370, at *4 (S.D.N.Y. Oct. 18, 2016)). "If a count seeks equitable relief, the Court must then determine whether the proposed preliminary injunction would be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Id*. (cleaned up).

Where a plaintiff seeks both legal and equitable relief, "a court retains its equitable power to freeze assets," but the plaintiff seeking an injunction must "demonstrate a nexus between the injunctive relief requested and the equitable relief ultimately sought." *Dong v. Miller*, No. 16-cv-5836, 2018 WL 1445573, at *8 (E.D.N.Y. Mar. 23, 2018) (cleaned up).

In contrast, where a plaintiff seeks merely legal relief and not equitable relief, an asset freeze injunction may not issue even if that plaintiff asserts that it has a valid security interest in the subject property. *See AKF, Inc.*, 2021 WL 2662070, at *5 ("In arguing that *Grupo Mexicano* does not forbid the injunction sought here, Plaintiff contends that, in contrast to the unsecured creditor plaintiffs in that case, Plaintiff has (by virtue of the Agreement) a valid and properly perfected security interest in the Receipts it seeks to have encumbered. Defendants dispute the validity of Plaintiff's security interest, […] but even assuming for these purposes that Plaintiff's security interest is valid and properly perfected, Plaintiff has not shown that this case falls within an exception to *Grupo*, because Plaintiff seeks no *equitable relief* with respect to the Receipts.") (cleaned up) (emphasis in original).

Here, Plaintiff's causes of action against Moonbeam Marina sound in equity. Plaintiff brings a claim for a declaratory judgment against Moonbeam Marina, requesting "that Plaintiff's preferred mortgage lien be declared superior to any interest, lien, or claim that Moonbeam Marina may have in, on, or against the Vessel." Compl. at 8. "Declaratory judgment actions are inherently neither equitable nor legal," and the specific details of the declaratory judgment sought will determine whether a declaratory judgment claim sounds in equity. *Petition of Rosenman & Colin*, 850 F.2d 57, 60 (2d Cir. 1988).

"When determining whether to characterize a declaratory judgment as legal or equitable, courts take two approaches. First, they examine the 'nature of the underlying controversy.' To do

6

so, courts often 'look[ ] to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act.' Second, they analyze whether 'the declaratory judgment resembles a traditional equitable remedy that had declaratory effects.'" *Cognetta v. Bonavita*, 330 F. Supp. 3d 797, 808–09 (E.D.N.Y. 2018) (cleaned up). Under both of these approaches, Plaintiff's declaratory judgment claim sounds in equity, as it in substance and nature resembles "proceedings to enforce a lien," which "are inherently equitable." *Petition of Rosenman & Colin*, 850 F.2d at 60. Furthermore, there is a clear nexus between the injunctive relief sought by Plaintiff and the equitable relief ultimately sought by Plaintiff, as the injunction freezing the sale of the Vessel will facilitate the Court's ability to determine the primacy and legitimacy of Plaintiff's asserted security interest in the Vessel.

Because the Court concludes that it has the authority to issue a preliminary injunction to grant the equitable preliminary relief sought by the Plaintiff, the Court proceeds to address whether Plaintiff has satisfied the prerequisites for a preliminary injunction.

### A. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)) (cleaned up). "It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper." *Dong*, 2018 WL 1445573, at *11.

Here, Plaintiff has adequately established irreparable harm. If Moonbeam Marina is permitted to auction the Vessel, a purchaser could quickly and easily move the Vessel outside of the Court's jurisdiction, thereby frustrating Plaintiff's attempts to enforce its lien and rendering a potential judgment in favor of Plaintiff ineffectual. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985). As long as there is no injunction prohibiting the sale or disposal of the Vessel, USAlliance faces the risk of the Vessel being moved without advance warning and with little ability to be tracked.

### B. Likelihood of Success on the Merits [2]

In order to prevail on the merits in its declaratory judgment claim, Plaintiff must establish that "Plaintiff's preferred mortgage lien [is] superior to any interest, lien, or claim that Moonbeam Marina may have in, on, or against the Vessel." Compl. at 8.

Plaintiff, in its complaint, alleges with supporting documentation that it has a maritime lien arising out of a first preferred ship mortgage. *See* Compl. at 2; *Id*. Ex. 1 (the "Mortgage"), ECF 1-2; *Id*. Ex. 2 (the "Loan and Security Disclosure Statements"), ECF 1-3. Moonbeam Marina, in contrast, asserts that it holds a garageperson's lien over the Vessel pursuant to New York Lien Law § 184. Compl. at 3; *Id*. Ex. 4, ECT 1-4 at 3. In allegedly permitting this lien to arise and continue accruing since 2022, Parachini allegedly defaulted under the terms of his mortgage with Plaintiff by committing a breach that has continued for more than 10 days. *See* Mortgage, Compl. Ex. 1 at 2 ("Neither Owner, any charterer, any operator, the Master of the Vessel, nor any other

---

[2] The Second Circuit's preliminary injunction standard allows a movant to demonstrate "*either* [1] 'a likelihood of success on the merits,' *or* [2] 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor.'" *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (quoting *Jackson Dairy v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)) (italics added).

person has any right, power or authority to create, incur or permit to be placed upon the Vessel any security interest or claim whatsoever […]").

Plaintiff has accordingly established a likelihood of success on the merits, as a maritime lien arising out of a first preferred ship mortgage would be superior to a garageperson's lien arising out of state law. *See Cargill, Inc., Skibsassuranceforening v. M/T Pacific Dawn*, 876 F.Supp. 508, 510, n.2 (S.D.N.Y. 1995) ("Competing maritime liens are ranked according to class, the top priority liens being paid out first. […] The classes are, from highest priority to lowest, the following: […] (5) Preferred mortgage liens […] (7) State-created liens of maritime nature.") (citing *U.S. v. One (1) 254 Ft. Freighter, M/V Andoria*, 570 Supp. 413, 415 (E.D. La. 1983), *aff'd* 768 F.2d 597 (5th Cir. 1985) (same)).

### C. The Balance of Equities and the Public Interest

Lastly, the Court considers the potential effects on the "public interest" of granting the injunction. *See E.E.O.C. v. KarenKim, Inc*., 698 F.3d 92, 100 (2d Cir. 2012) ("'The factors . . . [that] are pertinent in assessing the propriety of injunctive relief' are 'the balance of equities and consideration of the public interest'") (quoting *Winter*, 555 U.S. at 32).

Here, the balance of equities weighs in favor of Plaintiff: in the absence of injunctive relief it may suffer irreparable harm, while the cost to Moonbeam Marina of delaying an auction is comparatively slight. The interest of the public is likewise served by enjoining the sale of the Vessel, as an injunction would prevent a potentially innocent and unknowing purchaser becoming embroiled in a legal battle concerning the Vessel.

### D. Security is Not Required

Lastly, Rule 65(c) of the Federal Rules of Civil Procedure provides that that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court

considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Defendants have not requested that any bond be posted, and the Court is "is vested with wide discretion in the matter of security." *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 505 (E.D.N.Y. 2021) (quoting *Doc.'s Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)). Because Plaintiff has demonstrated a likelihood of success on the merits, and "a[n injunction] is unlikely to prejudice [Moonbeam Marina], and [Moonbeam Marina] may readily collect damages from [USAlliance], the Court declines to require [USAlliance] to post a bond." *Id.*

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for a preliminary injunction pending the disposition of the declaratory judgment claim. Defendant Moonbeam Gateway Marina LLC is enjoined pending the disposition of the declaratory judgment claim in this action from selling, removing, transferring or disposing of S/V HELICORNE II (O.N. 1265818), her engines, tackle, equipment, and appurtenances (the "Vessel") or any property, ownership rights or interests in the Vessel or transferring possession of the Vessel to any third persons, except as may be authorized by this Court. The Vessel may not be removed from its current location absent this Court's Order based on good cause shown.

Plaintiff is directed to serve a copy of this Order on Defendants on or before June 16, 2024 and file proof of service of the same.

**SO ORDERED**.

Dated: June 16, 2023
Brooklyn, New York

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge